UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:14-cv-202-GFVT

JANIA NEW,                                                                                          PLAINTIFF,

V.                      **MAGISTRATE JUDGE'S REPORT**
                        **AND RECOMMENDATION**

CAROLYN W. COLVIN,
Commissioner of Social Security,                                                        DEFENDANT.

### I.  INTRODUCTION

Plaintiff, Jania New, brings this action under 42 U.S.C. § 405(g) to challenge the Defendant Commissioner's final decision denying Plaintiff's application for a period of disability and disability insurance benefits (DIB).  This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B). [R. 14].  For the reasons set forth herein, it is recommended that Plaintiff's Motion for Summary Judgment [R. 11] be denied, Defendant's Motion for Summary Judgment [R. 12] be granted, and that Judgment be entered affirming the final decision of the Commissioner.

### II.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff was born in 1962 [R. 7-1 at 177] and on her disability application, claimed she was disabled as of 2011. [R. 7-1 at 177].  She completed the eleventh grade [R. 7-1 at 208] and has employment experience as a factory worker, a cashier, a dishwasher, chop saw operator, and assembly line inspector. [R. 7-1 at 218].

In her Disability Report, Form SSA-3368, Plaintiff claimed her work ability was limited due to multilevel degenerative disc disease, degenerative joint disease, spinal problems, anxiety, depression, and COPD. [R. 7-1 at 207]. Thus, Plaintiff filed for a period of disability benefits on April 19, 2011. [R. 7-1 at 177-182]. The Social Security Administration denied her claims initially [R. 7-1 at 117-120] and upon reconsideration. [R. 7-1 at 101-116]. After denial of her claims, she requested a hearing in front of an Administrative Law Judge ("ALJ"). [R. 7-1 at 129]. Subsequently, Plaintiff appeared and testified at the hearing held on October 4, 2012 in Lexington, Kentucky, before ALJ Jonathan Stanley. [R. 7-1 at 41-83]. At the hearing, the Plaintiff testified and was represented by counsel, Staci Hibbard, and testimony was also heard from Laura Alicia Whitten, a vocation expert. [R. 7-1 at 41-83].

The ALJ ruled against Plaintiff in a written decision dated December 10, 2012. [R. 7-1 at 16]. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since April 18, 2011. [R. 7-1 at 3]. At step two, the ALJ found the Plaintiff suffered from the following severe impairments under 20 C.F.R. 404.1520(c): (1) Asthma; (2) Chronic obstructive pulmonary disease (COPD); (3) Obesity; (4) Major depressive disorder without psychotic features; (5) Anxiety disorder, nos; (6) Degenerative disc disease of the lumbar spine; and (7) Chronic left arm pain. [R. 7-1 at 21]. Despite these conditions, the ALJ determined that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." [R. 7-1 at 23]. Continuing with his evaluation, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. 416.967(b), with the following limitations:

> ...except the claimant can occasionally climb stairs and ramps, but cannot climb ropes, ladders, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can frequently reach using her non-dominant left upper extremity, but has no limitation with regard to her dominant right upper extremity; must avoid concentrated exposure to extremes in temperature, humidity, pulmonary irritants, and vibration; and the claimant cannot work at unprotected heights or around hazardous machinery. The claimant can understand, remember, and carry out short, simple instructions and make simple work-related judgment; can maintain adequate attention and concentration to perform simple tasks; will require a short demonstration or oral instruction when learning new tasks; can manage and tolerate simple routine changes in the work place setting; and the claimant can interact occasionally with the general public.

[R. 7-1 at 26].

At step five, the ALJ noted that Plaintiff had no past relevant work, [R. 7-1 at 33], and that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [R. 7-1 at 34]. Based on these findings, the ALJ concluded that Plaintiff was not under a "disability" as defined by the Social Security Act. [R. 7-1 at 34]. Following the adverse decision of the ALJ, Plaintiff properly exhausted her administrative remedies by appealing to the Social Security Appeals Council, which denied her request for review. [R. 7-1 at 1-5].

After properly exhausting the administrative appeals process without success, the Plaintiff filed a Complaint in the Eastern District of Kentucky on May 23, 2014. [R. 1]. In her Motion for Summary Judgment [R. 11], the Plaintiff sets forth multiple arguments for reversal of the ALJ's opinion. The Defendant responds that the ALJ's opinion should be affirmed, as it is supported by substantial evidence. [R. 12]. The case is now ripe for review.

### III . STANDARD OF REVIEW

A reviewing court must uphold the findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). The Sixth Circuit has held that "substantial evidence exists when a reasonable mind

might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (internal citations and quotation marks omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005) (internal citations and quotation marks omitted). Sixth Circuit precedent suggests that a finding of "no substantial evidence" would be appropriate in situations where the ALJ ignores uncontested, compelling evidence for one side, makes no express findings on witness credibility, and makes a ruling based on facts with "little if any evidentiary value." Noe v. Weinberger, 512 F.2d 588, 596 (6th Cir. 1975); see also, Glass v. Sec'y of Health, Educ. & Welfare, 517 F.2d 224 (6th Cir. 1975). Otherwise, if there is substantial evidence to support the ALJ's decision, "it must be affirmed even if the reviewing court would decide the matter differently." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994).

## IV. ANALYSIS

The Commissioner's regulations provide a five-step process for the evaluation of disabilities. See 20 C.F.R. § 404.1520(a). First, the Commissioner determines whether the claimant is currently engaging in substantial gainful activity; if so, she is not disabled. Id. § 404.1520(a)(4)(i). Second, if claimant is not engaged in substantial gainful activity, the Commissioner must determine whether

she has a severe impairment; if not, she is not disabled. Id. § 404.1520(a)(4)(ii). Third, if claimant has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1; if the severe impairment meets or equals a listed impairment, claimant is presumed disabled. Id. § 404.1520(a)(4)(iii). Fourth, if claimant's impairment does not meet or equal a listed impairment, the Commissioner must determine whether claimant's impairment prevents her from doing past relevant work; if not, she is not disabled. Id. § 404.1520(a)(4)(iv). Fifth, if claimant's impairment prevents her from doing past relevant work, the Commissioner must determine whether other work exists in the national economy that accommodates her RFC and vocational factors (age, education, skills etc.); if so, she is not disabled. Id. § 404.1520(a)(4)(v).

At step one of this process, there is no dispute between the parties that Plaintiff has not participated in "substantial gainful activity" since she ceased working in February 1997, on account of her alleged disability. However, Plaintiff alleges three different errors made by the ALJ, each of which pertain to different steps in the Commissioner's inquiry. Specifically, Plaintiff asserts that:

1. The ALJ failed to identify the Plaintiff's spinal stenosis as a severe impairment.

2. The ALJ failed to reasonably weigh the opinion evidence provided by Dr. Tibbs.

3. The ALJ improperly assessed the Plaintiff's credibility.

[R. 11-1]. Each issue raised by the Plaintiff will be considered, in turn, below.[1]

---

[1] The undersigned has labored to address each of the arguments presented in Plaintiff's motion. However, Plaintiff is represented by counsel, and it is not this Court's duty to construct her arguments for her if they are not adequately developed in her summary judgment motion. Lewless v. Sec'y of Health and Human Servs., 25 F.3d 1049, at *4 (6th Cir. 1994) (unpublished table decision); see also United States v. Layne, 192 F.3d 556, 566 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); Collins v. Astrue, Civil Action No. 08-177-HRW, 2009 WL 29405, at *2 (E.D. Ky. Jan. 5, 2009). To the

A. Spinal stenosis as a severe impairment

In her motion for summary judgment, the Plaintiff claims that the ALJ did not discuss whether her "objectively diagnosed severe stenosis was the source of her pain, which is a violation of the pain regulation and Duncan." [R. 11-1 at 4].  Plaintiff further claims that this failure was not a harmless error, as spinal stenosis is a condition recognized by the Agency as one of only three disabling lumbar conditions under Listing 1.04. Id.  Upon review of the record, this claim is without merit.

The Listing of Impairments, 20 C.F.R., Part 404, Subpart P, Appendix 1, "describe[s] each major body system impairment considered severe enough to preclude a person from any gainful activity regardless of age, education, or work experience." Ison v. Astrue, Civil Action No. 5:10cv286-JMH, 2011 U.S. Dist. LEXIS 112009 at *18-*19 (E.D. Ky. Sept. 29, 2011) (citing 20 C.F.R. §§ 404.1525(a), 416.925(a)).  Because vocational factors are not considered, a claimant must present precise clinical evidence that his or her impairment meets Listing 1.04. See 20 C.F.R. §§ 404.1520(d), 416.920(d).  The evidence of specific medical findings presented must satisfy all of the criteria of the particular listing. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526, 416.920(a)(4)(iii), 416.925, 416.926; Sullivan v. Zebley, 493 U.S. 521, 530-32 (1990); Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001); Hale v. Sec'y of Health and Human Servs., 816 F.2d 1078, 1082-83 (6th Cir. 1987).  Put simply, "[f]or a claimant to show that [her] impairment matches a listing, it *must meet all* of the specified medical criteria. An impairment that manifests only some of those criteria, *no matter how severely*, does not qualify." Zebley, 493 U.S. at 530  (emphasis added).

---

extent that any of Plaintiff's arguments are not addressed in this recommendation, the undersigned has determined that they are waived due to lack of developed argumentation.

>Listing 1.04, in pertinent part, requires the following:
>
>1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, *spinal stenosis*, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.  In this case, the ALJ specifically found that the medical evidence, "establishes chronic lower back pain, but the evidence does not satisfy the criteria of the listing in Section 1.04 of Appendix I.  The ALJ further held:

>Specifically, the record is devoid of sufficient evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation.  In April 2011, an MRI of the lumbar spine showed degenerative disc disease at L3-L4, L4-L5, and L5-S1... While the MRI showed some evidence of spinal stenosis, [the] medical record revealed other evidence showing that the claimant functioned above the level of the listing.  Particularly, in September 2012, Rick Pellant, D.O., examined the claimant and noted that there was no evidence of neurological deficit.  Dr. Pellant noted that seated straight leg tests were negative and the claimant was able to rise from a seated to standing position without difficulty.  Further, the claimant demonstrated a regular tandem, reciprocating gait. (Ex. 32F) These abilities show that the claimant functioned above the level of the listing.

[R. 7-1 at 23]

After careful review of the ALJ's findings, the Plaintiff's argument lacks merit.  In her motion for summary judgment, the Plaintiff relies upon Dr. Pellant's medical examine in order to establish her claim that she suffers from spinal stenosis. [R. 11-1 at 4-5].  The Plaintiff claims that Dr. Pellant establishes in his patient summary that her, "MR [sic] from March does show significant stenosis at L4-5 combined with significant facet arthropathy [which] can account for

her underlying pain." [Rs. 11-1 at 5; 7-1 at 671]. The doctor's final note in his report included his diagnosis which, "include[d] but [was] not limited to, discogenic and/or facet mediated pain provication, myofascial pain, neuropathic pain and musculoskelital [sic] pain." [R. 7-1 at 671].

When reviewing the listing requirements of Section 1.04 of Appendix I, the findings of the ALJ, and the examination report of Dr. Pellant, this court finds that the ALJ did not fail to find that the Plaintiff suffered from a severe impairment, such as spinal stenosis. Though, Dr. Pellant recognizes that a previous MRI did show some signs of spinal stenosis, this alone is insufficient to find that the Plaintiff qualified as having a severe impairment under Listing 1.04. Dr. Pellant noted in his report, and the ALJ highlighted in his findings, the fact that the Plaintiff was able to move without difficulty during his examination. [Rs. 11-1 at 5; 7-1 at 670-671].

Further still, even *if* Dr. Pellant had diagnosed her with spinal stenosis, his own assessment of her movement would have disqualified her from subpart A of the listing, as the Plaintiff shown the ability to move without any difficulty. [R. 7-1 at 670]. Specifically, Subpart A of Listing 1.04 requires, if the lower back is involved, a positive straight leg test. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. The same report that the Plaintiff relies upon in her argument contains a negative seated straight leg raise, which would directly disqualify her under the listing. [R. 7-1 at 669]. Therefore, the court finds that the Plaintiff's claim that the ALJ failed to determine that she her spinal stenosis qualified as a severe impairment under Listing 1.04 is without merit.

B. Weight Given to Medical Opinions

In her motion for summary judgment, Plaintiff also claims that the ALJ erred when

weighing the opinion evidence provided by Dr. Phillip Tibbs. [R. 11-1 at 10]. Plaintiff's claim seems to focus on the ALJ's perceived error in comparing the March 2012 findings with his earlier June 2011 findings. [R. 11-1 at 10]. Upon review of the record, Plaintiff's argument regarding the ALJ's alleged errors while weighing the opinion medical evidence is tantamount to a request for the court to reweigh the opinion evidence provided on the record, which this court will not do, as "this court does not try the case de novo, nor resolve conflicts on the evidence, nor decide questions of credibility." Cutlip v. Secretary of Health and Human Servs., 25 F.3d 284, 286 (6th Cir. 1994); see Brainard v. Secretary of Health & Human Servs., 889 F.2d 679, 681 (6th Cir.1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).

In addition, it is unclear whether the Plaintiff is attempting to claim that Dr. Phillip Tibbs' opinion should have been given the weight of a treating physician. Plaintiff states in her motion that the, "ALJ's reference to 'other evidence' conflicting with Dr. Tibbs' opinion is vague and not a good reason." [R. 11-1 at 11]. Plaintiff then supports this statement with the holdings of Wilson v. Commissioner, 378 F.3d 541, 544 (6th Cir. 2004), where the court found that good reasons for rejecting the opinion of a *treating* physician must be specific enough to make clear to any subsequent reviews the weight the adjudicator gave the treating source's medical opinion and the reasons for that weight. (emphasis added). Therefore, though disjointed in her brief and in an abundance of caution, to the extent it appears that Plaintiff is arguing that Dr. Tibbs' opinions should have been afforded more weight under the treating physician rule, the court will address this claim.

Regulation 20 C.F.R. § 404.1527(d)(2) (2004) requires the ALJ to "give good reasons" for not giving weight to a treating physician in the context of a disability determination. This

9

requirement is part of the "treating source" regulation adopted by the Social Security Administration in 1991. See generally Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir.1998). Pursuant to this regulation, an ALJ must give more weight to opinions from treating sources since these sources are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Wilson v. Commissioner of Social Sec., 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." Id. Treating physicians' opinions are normally given substantial, if not controlling, deference; however, they "are only given such deference when supported by objective medical evidence." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) citing Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003). In this case, the ALJ permissibly decided to afford less weight to the findings of Dr. Tibbs, as his March 2012 report contradicted the other objective medical evidence provided for in the record.

The Plaintiff argues that the ALJ's rejection of this opinion was in error because the ALJ failed to take into account all of the reports Dr. Tibbs provided before determining to give his opinions less than controlling weight. [R. 11-1 at 11-12]. When an ALJ decides not to give a treating source controlling weight, the ALJ applies factors listed in 20 C.F.R. § 404.1527(d)(2)-

10

(6). Under the regulations, the factors that an ALJ considers are: "(1) the length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source." Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 747 (6th Cir. 2007). However, the ALJ is not required to explicitly discuss each factor involved in deciding the weight to be afforded to a treating physician's opinion. Francis v. Comm'r of Soc. Sec., 414 F. App'x 802, 804 (6th Cir. 2011). Moreover, the ALJ retains the ultimate responsibility for determining whether a claimant is disabled. Schuler v. Comm'r of Soc. Sec., 109 F. App'x 97, 101 (6th Cir. 2004). For this reason, conclusory statements by the treating source that the claimant is disabled are not entitled to deference. Id. With these standards in mind, the undersigned will now address the ALJ's evaluation of the medical opinions rendered by Dr. Tibbs.

As an initial matter, the Court notes that Dr. Tibbs' opinion that the Plaintiff is disabled is not entitled to any special deference because it is a conclusory statement on the dispositive matter of whether Plaintiff is disabled. Schuler, 109 F. App'x at 101; see also 20 C.F.R. § 416.927(e)(2) (explaining that the final responsibility for determining a claimant's RFC "is reserved to the Commissioner"). Thus, the Court will turn its focus to the remaining portions of Dr. Tibbs' opinion, which mainly concern Plaintiff's alleged impairments and limitations.[2]

In formulating the Plaintiff's residual functional capacity, the ALJ considered the reports

---

[2] As the Plaintiff does not make a clear argument addressing whether Dr. Tibbs should have qualified as a treating physician under the rule or whether the ALJ properly considered the factors under 20 C.F.R. § 404.1527(d)(2)-(6), the court will directly address the opinions Dr. Tibbs provided in the record and the ALJ's findings regarding those opinions submitted. It is not lost on this court that the record indicates that the Plaintiff went to Dr. Tibbs' office a total of three times during their professional relationship, but Dr. Tibbs personally examined the Plaintiff once. [R. 7-1 at 463-66, 612-20].

11

submitted by Dr. Tibbs' office. [R. 7-1 at 33]. In March 2012, it was Dr. Tibbs' assistant, Randall Kindler, P.A., who examined the Plaintiff and not Dr. Tibbs. [R. 7-1 at 33]. It was Kindler who opined that, "it [was] within all reasonable medical probability that [the Plaintiff] is disabled from any viable occupation." [R. 7-1 at 33, 612-615]. Kindler further noted that surgery was not recommended. [R. 7-1 at 33, 612-620]. Upon review, the ALJ also noted that though Dr. Tibbs signed the documents that Kindler prepared indicating that he agreed with Kindler's assessment of the Plaintiff, Dr. Tibbs also states in the report that he did not see the Plaintiff during this visit. Id. The ALJ also highlights the ambiguity of whether Dr. Tibbs agreed with Kindler's assertion that surgery was not recommended, which would pertain to the claimant's treatment, or whether Dr. Tibbs also agreed that the claimant was disabled, which pertains to the claimant's ability to work. [R. 7-1 at 33].

Furthermore, Kindler's assessment of the Plaintiff's pain does not indicate whether his findings were based on an objective test or the complaints stated to him by the Plaintiff. [R. 7-1 at 612-615]. Thus, the ALJ provided a "good reason" for not affording controlling weight to the opinion provided by Dr. Tibbs. See Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993) (explaining that medical opinions, even those of treating doctors, are not entitled to controlling weight when they are based on subjective complaints rather than objective, clinical evidence); Miller v. Comm'r of Soc. Sec., No. 12-12639, 2013 WL 4482969, at *10 (E.D. Mich. Aug. 20, 2013).

Having found a "good reason" not to afford controlling weight to the opinion of Dr. Tibbs, the ALJ was then required to explain his decision to afford lesser weight to his opinion using the factors outlined in 20 C.F.R. § 404.1527(d)(2) (i.e., length and extent of treatment

relationship, supportability, consistency with the record, and the treating source's specialization). Wilson, 378 F.3d at 544-46.  In explaining why Dr. Tibbs' opinion was entitled to lesser weight, the ALJ stated in his written opinion that, "other medical evidence, including the findings made by Dr. Pellant in September 2012, show that the claimant is able to ambulate effectively and has no neurological limitations.  These observations indicate that the claimant retains the physical ability to perform some work activities." [R. 7-1 at 33].  Additionally, the evidence provided by Dr. Tibbs office was ambiguous and the opinions provided by Dr. Tibbs and his physician assistant contradicted the other medical evidence provided in the record. Id.

In sum, the ALJ provided a "good reason" for not affording controlling weight to the opinion provided by Dr. Tibbs.  Further, the ALJ adequately explained the weight that he did, in fact, give to Dr. Tibbs' opinion using the 20 C.F.R. § 404.1527(d)(2) factors.  Thus, the Court finds no error in the ALJ's evaluation of Dr. Tibbs' opinion.

## C.  The ALJ's Credibility Determination

Plaintiff next argues that the ALJ erred in his evaluation of the credibility of Plaintiff's testimony, primarily concerning the ALJ's consideration of the Plaintiff's normal day-to-day activities. Id.  Plaintiff claims that the ALJ erred by construing her testimony as "a showing [that] she is capable of performing light work.  There is no activity that [the Plaintiff] described being able to do on a regular basis for more than fifteen (15) to twenty (20) minutes at a time." [R. 11-1 at 14].  Plaintiff further asserts that the "ALJ's characterization of [the Plaintiff's] activity level is absolutely the same type of mis-characterization the Gayheart and Rogers court denounced." Id.     The Plaintiff's claim that her testimony was mis-characterized by the ALJ is unfounded and unsupported by the record.  Moreover, her claim that Gayheart and Rogers

directly relate to the issue presented in this case is an incorrect statement of the law. In fact, the court in <u>Gayheart v. Commissioner of Soc. Sec.</u>, 710 F.3d 365 (6th Cir. 2013) found that the Plaintiff's testimony regarding her sustained interactions with family members would only be relevant if they suggested that the Plaintiff could do something on a sustained basis that was inconsistent with her doctor's opinions, which they were not. The Sixth Circuit also found that the ALJ focused on isolated pieces of the record when determining the type of weight to afford the opinions provided by one of the Plaintiff's doctors. <u>Id.</u> at 378.

Further still, the court in <u>Rogers v. Commissioner of Soc. Sec.</u>, 486 F.3d 234 (6th Cir. 2007) found that the ALJ did not take into consideration the entire record when making a credibility determination of the Plaintiff, largely due to the fact the Plaintiff's alleged disability was fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, making the need for providing justification for discounting a claimant's statements particularly important. In this case, the ALJ did not mis-characterize any of the statements made by the Plaintiff or fail to consider the record as a whole when making that credibility determination. Therefore, these cases do not control the issue regarding the ALJ's alleged mis-characterization of the Plaintiff's testimony.

Upon review, the court finds that the ALJ did not construe the Plaintiff's testimony at all. Instead, the ALJ determined that the Plaintiff was not credible based on the interactions he had with the her at the hearing and upon review of the record as a whole. While making this finding, the ALJ began by reiterating that the medical evidence and the medical opinions provided for in the record did not support the Plaintiff's claims of disability. [R. 7-1 at 33]. The ALJ continued by stating that:

> The claimant's allegations are also undermined by inconsistencies between her statements and the medical evidence. For example, the claimant arrived at the hearing with a cane. She indicated that the cane was not prescribed, but it was recommended by Dr. James. However, the medical records show no evidence of a recommendation. Further, no medical records indicate that the claimant used a cane at any office visits. These facts undermine the claimant's credibility because they suggest that she overstated her limitations at the hearing. The claimant's credibility also is decreased because of her poor work history and failure to search for a job. For example, in June 2011, Dr. Fishkoff recorded that the claimant had made no attempts to secure a job. (Ex. 15F). This evidence is significant because while the claimant alleges that she cannot work, no evidence shows that she has ever been fired from a job due to her impairments or unable to perform a job due to her impairments.

[R. 7-1 at 33].

Upon review of the ALJ's findings, the Plaintiff's claim that the ALJ mis-characterized her statements made at the hearing are without merit. The ALJ methodically laid out his observations of the Plaintiff and her less than credible statements made at the hearing. He also reviewed the record as a whole to determine whether those statements matched the recommendations and medical opinions provided for in the record; they did not. Based on the foregoing, the Court finds that the ALJ made no error in his credibility determination of the Plaintiff.

## V. CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the Plaintiff's Motion for Summary Judgment [R. 11] be DENIED, the Defendant Commissioner's Motion for Summary Judgment [R. 12] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v.

15

Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed August 25, 2015.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge